IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED

05 APR 26  AM 11: 3.

ROBERT R. DI   CLIO
CLERK, U.S. D    .T.
W.D. OF TN, MEMPHIS

JOHNNY JOHNSON,

      Plaintiff,

v.

                        No. 03-2911-B/V

SHELBY COUNTY SCHOOLS,

      Defendant.

---

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Before the Court is the motion of the Defendant, Shelby County Schools ("SCS"), for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Johnny Johnson, a black male, initiated this action pro se on December 4, 2003, alleging that SCS discriminated against him on the basis of his race and sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq., as amended, and on the basis of his age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634. As the Plaintiff has responded to Defendant's motion as well as filed a reply[1] to the Defendant's reply to Johnson's initial response, the motion is now appropriate for disposition.

---

[1] Included in Johnson's reply memorandum in opposition to Defendant's motion for summary judgment is Plaintiff's motion to reset the trial date.

1

32

FACTS

Johnson applied for a position as a substitute teacher with the Defendant in early 2002. Two months later, Alma Williams, the human resources supervisor at SCS at the time, interviewed the Plaintiff. (Def.'s Statement Undisputed Facts at 1-2.) SCS ultimately hired the Plaintiff and provided him with training on what to do in specific classroom situations, how to gain control of a class, how to make assignments, how to ask questions, and a general overview of the system. (Def.'s Statement Undisputed Facts at 2.) However, as Johnson concedes, the parties never entered any written employment contract. (Mem. Supp. Def. Shelby County Schools' Mot. Summ. J. ("Def.'s Mem."), Exhibit 21: Deposition of Johnny Johnson at 153 (hereinafter "Johnson dep. at ___").)

In April 2002, Plaintiff began substituting at various schools in Shelby County, including Millington East Elementary School, Woodstock Middle School, and Northaven Elementary School. On September 23, 2003, the curriculum coordinator of Woodstock Middle submitted to the Defendant an "unsatisfactory performance" report in which Johnson was noted to have made inappropriate comments, such as he was God, he babysat Jesus, and the "IQ test" was for white people. (Def.'s Mem., Ex. 2.) Similarly, the curriculum coordinator at Northaven Elementary presented to SCS a report of unsatisfactory performance because "Mr. Johnson ha[d] no control over the students . . . [and] every class he has substituted in has been out of control." (Def.'s Mem., Ex. 3.) As a result of these reports, Williams met with Plaintiff to discuss the complaints and told him that he was expected to maintain control of the classroom. He was also advised that he would no longer be allowed to teach at those schools but could substitute at other schools. (Def.'s Mem. at 5; Johnson dep. at 119.) On October 18, 2002, SCS received from Millington East Elementary another report of unsatisfactory performance which stated that Johnson was unable to maintain

discipline as a result of which the principal spent a large amount of time in Plaintiff's classroom. (Def.'s Mem., Ex. 5.)  A final report was submitted by the curriculum coordinator at Millington Middle School because Johnson had rummaged through a teacher's desk, offered students candy from the desk drawer, and made inappropriate comments to the students including statements that Americans were terrorists and that he had personally met with Bin Laden. (Def.'s Mem., Ex. 4.)

After several meetings and letters in which the Plaintiff denied acting inappropriately and claimed that his words were taken out of context, Williams sent Johnson a letter indicating that he could no longer substitute teach for Shelby County Schools because he did "not consistently follow through with the lesson plans" and did "not effectively discipline the students." (Def.'s Mem., Ex. 18.)  Williams also noted that she was concerned by the fact that he did not seek guidance or suggestions from other teachers regarding maintaining control in the classroom. (Def.'s Mem., Ex. 18.)

## STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322,  106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir. 1988).  In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).  When the motion

3

is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S.Ct. at 2553. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S.Ct. at 1356. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S.Ct. at 2552. In this circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action." Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)). The "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## ANALYSIS

In his memorandum, Plaintiff argues that summary judgment is inappropriate because the Defendant failed to adhere to the Local Rules of this District as well as the Federal Rules of Civil Procedure. Johnson also maintains that he has presented sufficient evidence supporting his race, sex, and age discrimination claims to survive the Defendant's motion. The Court will consider the arguments in turn.

4

I.  Defendant's Failure to Follow the Local Rules and Federal Rules

Johnson claims that SCS did not comply with Local Rule 7.2, Local Rules of the U.S. Dist. Ct. for the W. Dist. of Tenn. ("Local Rules"), by failing to file a statement of facts of which the Defendant claimed there was no genuine issues to be tried.  (Mem. Law Opp'n Def.'s Mot. Summ. J. ("Pl.'s Mem.") at 5.)  Local Rule 7.2(d)(2) requires that the proponent of a summary judgment motion include in a memorandum designated by serial numbering each material fact relied upon in support of its motion along with copies of the record relied upon as evidence of the material fact. LR7.2(d)(2), Local Rules.  Based upon a review of the Court's docket, it is clear that the Defendant filed an accompanying Statement of Undisputed Facts on January 28, 2005 in compliance with the Local Rules.  (See Def.'s Statement Undisputed Facts.)  Thus, Plaintiff's argument on this issue is meritless.

Johnson also maintains that the Defendant cannot rely in its motion for summary judgment on the Plaintiff's deposition testimony.  (Pl.'s Mem. at 15.)  He cites to Federal Rule of Civil Procedure 32 which states in part that "[a] deposition taken without leave of court pursuant to a notice under Rule 30(a)(2)(C) shall not be used against a party who demonstrates that, when served with the notice, it was unable through the exercise of diligence to obtain counsel to represent it at the taking of the deposition." Fed. R. Civ. P. 32(a)(3).  A notice under Rule 30(a)(2)(C) is necessary when "a party seeks to take a deposition before the time specified in Rule 26(d)." Fed. R. Civ. P. 30(a)(2)(C).  Rule 26(d) states that before a party may engage in discovery from any source, the parties, at least 21 days before the scheduling conference is held, must have conferred to consider the nature and basis of their claims and defenses.  Fed. R. Civ. P. 26(d) & (f).  In this case, a scheduling conference was held before Magistrate Judge Diane Vescovo on May 13, 2004 and

Plaintiff's deposition was not taken until September 22, 2004. Consequently, the Defendant did not conduct Plaintiff's deposition, which was not taken pursuant to a notice under Rule 30(a)(2)(C), until well after the 21 day time frame under Rule 26 had expired. Accordingly, Johnson's argument that the Defendant cannot rely on his deposition is without basis.

Finally, because the Defendant relied in its motion on part of the Plaintiff's deposition testimony, Johnson argues that SCS should be required to introduce into evidence another part of his deposition in which he stated that he attempted to contact a large number of Memphis attorneys after he was served with the notice of the deposition but was unable to successfully hire one. (Pl.'s Mem. at 15-16.) In support of his argument, Johnson points to Rule 32(a)(4) which provides that "[i]f only part of a deposition is offered in evidence by a party, an adverse party may require the offeror to introduce any other part which ought in fairness to be considered with the part introduced, and any party may introduce any other parts." Fed. R. Civ. P. 32(a)(4). However, the fact that Johnson was unable to locate an attorney who would take his case is irrelevant as to whether Plaintiff was in fact discriminated against and irrelevant under Rule 32(a)(3) because his deposition was not taken pursuant to a notice under Federal Rule of Civil Procedure 30. Accordingly, the Court finds that the Defendant is not required to introduce the portion which Plaintiff claims should be admitted under Rule 32(a)(4). See e.g., Fountain v. Norfolk & Western R.R. Co., No. 89-3462, 1990 WL 17871, at **2 (6th Cir. Feb. 28, 1990) (excluding a deposition as irrelevant under Rule 402 of the Federal Rules of Evidence).

## II. Title VII Discrimination

In order to establish a claim under Title VII, a plaintiff must offer either direct or circumstantial evidence of discrimination that would permit an inference of discriminatory treatment.

6

Farmer v. Cleveland Pub. Power, 295 F.3d 593, 603 (6th Cir. 2002). If direct evidence of discrimination is not available, then the burden-shifting approach set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) applies. Farmer, 295 F.3d at 603. To establish direct proof of discriminatory intent, one must present evidence proving the "existence of a fact without any inferences or presumptions, if believed." See, e.g., Brack v. Shoney's, Inc., 249 F. Supp. 2d 938, 947 (W.D. Tenn. 2003) (citations omitted) (finding in a race discrimination case the comment "[the] store needed a manager who is 'fair skinned'" was direct evidence, while a statement calling the plaintiff a "little black sheep" was not). The Sixth Circuit has stated that direct evidence in a disability case would be similar to an employer stating "I fired you because you are disabled." Smith v. Chrysler Corp., 155 F.3d 799, 805 (6th Cir. 1998). Here, the Plaintiff acknowledges that he is presenting an indirect case because an inference that he was discharged due to discriminatory animus is necessary to conclude that the Defendant discriminated against him. (See Establishing a Prima Facie Case of Age Gender Discrimination in Employment ("Pl.'s Prima Facie Case") at 11.) Thus, Johnson's discrimination claims must be analyzed under the McDonnell Douglas burden-shifting approach. See Brack, 249 F. Supp. 2d at 947.

Under the McDonnell Douglas framework, the plaintiff must first present a prima facie case of discrimination, which would create a rebuttable presumption of discrimination. Vaughn v. Watkins Motor Lines, Inc., 291 F.3d 900, 906 (6th Cir. 2002). If the plaintiff meets this requirement, the defendant is then required to "articulate some legitimate, nondiscriminatory reason" for engaging in the challenged conduct. Id. (citation omitted). If the defendant satisfies its burden, the plaintiff

must then "prove that the proffered reason was actually a pretext to hide unlawful discrimination." Id. (citation omitted).

In order to establish a prima facie case of discrimination, the plaintiff must demonstrate that he was (1) a member of a protected class, (2) qualified for his position, (3) suffered an adverse employment action, and (4) was replaced by one who was not a member of his protected class. Id. If the defendant is able to rebut the prima facie case by offering legitimate, nondiscriminatory reasons for its challenged action, the burden shifts back to the plaintiff to show that the defendant's stated reasons were pretextual. Vaughn, 291 F.3d at 906. To establish that the proffered reasons were pretextual, the plaintiff must show by a preponderance of the evidence that the reasons either (1) have no basis in fact, (2) did not actually motivate the adverse employment decision, or (3) are insufficient reasons to motivate the decision. See Whitaker v. Wallace, 170 F.3d 541, 544 (6th Cir. 1999) (citations omitted). The ultimate burden of persuasion remains at all times with the plaintiff. Burdine, 450 U.S. at 253, 101 S.Ct. at 1093.

### A. Race Discrimination

#### 1. Disparate Treatment

Johnson asserts that he has made out a prima facie claim for race discrimination. As a black male, he was a member of a protected class and as a trained substitute teacher, in addition to his teaching experience, was likely qualified for the job. See Vaughn, 291 F.3d at 906. The Plaintiff suffered an adverse employment decision by being prohibited from substituting for Shelby County Schools. See id. However, Plaintiff makes no reference to being replaced by a substitute teacher who is of the Caucasian race. Thus, Johnson has failed to satisfy the fourth element of a prima facie case of discrimination.

8

Even if Plaintiff could present a prima facie case, his claim would still fail.  Under the McDonnell Douglas framework, the Defendant must provide a nondiscriminatory reason for its decision following the presentation of a prima facie case.  Id.  Defendant submits that Alma Williams terminated Plaintiff because he failed to discipline the students and follow the lesson plan as well as made inappropriate remarks to the students. (Def.'s Mem., Ex. 18.)  The Defendant based its decision on the fact that Johnson had already received reports of unsatisfactory performance from four of the schools at which he taught.  (Def.'s Mem., Ex. 2.)

Consequently, because SCS offered nondiscriminatory reasons for terminating Johnson's employment, the Plaintiff would be required to demonstrate that the proffered reasons were pretextual.  See Vaughn, 291 F.3d at 906.  Additionally, as Williams was the person who hired Johnson, he must overcome an inference that her decision was not motivated by discrimination. See Buhrmaster v. Overnite Trasp. Co., 61 F.3d 461, 463 (6th Cir. 1995) ("[w]hen the individual who hires a person is the same person who fires an employee, there is a strong inference that discrimination did not motivate the employment decision"); see also Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 590 (6th Cir. 2003) (stating that the "same-actor" inference supports "the conclusion that a person who hired an age-protected employee, but who later demotes or discharges that same employee, probably was not motivated by ageist bias").

Johnson did not even assert, much less present any evidence, that Williams's stated reasons for terminating him had no basis in fact, did not motivate the decision, or were insufficient to impel the decision.  See Whitaker, 170 F.3d at 544 (citations omitted).  In fact, in his own deposition, Plaintiff stated that he thought Williams genuinely based her decision to terminate his employment on the various reports which he believed she received. (Johnson dep. at 123, 150.)  Plaintiff has not

9

shown that Defendant's reasons for termination were pretextual. Accordingly, Plaintiff's claim of disparate treatment is dismissed based on his failure to establish a prima facie case as well as his inability to show that Defendant's stated reasons for termination were not worthy of belief.

### 2. Disparate Impact

A claim of disparate impact "occurs when an employer treats some employees less favorably than others because of race, religion, sex, or the like." Huguley v. General Motors Corp., 52 F.3d 1364, 1370 (6th Cir. 1995). Title VII proscribes "'not only overt discrimination but also practices that are fair in form, but discriminatory in operation.'" Kovacevich v. Kent State Univ., 224 F.3d 806, 830 (6th Cir. 2000) (quoting Griggs v. Duke Power Co., 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971)). In a disparate impact case, a plaintiff must "prove that a particular employment practice, although neutral on its face, has produced a significant adverse effect on a protected group to which the plaintiff belongs." Id. The plaintiff "must first establish a prima facie case by identifying and challenging a specific employment practice, and then show an 'adverse effect' by offering statistical evidence 'of a kind or degree sufficient to show that the practice in question has caused the' adverse effect in question." Id. (internal citations omitted).

Johnson argues that the "report of unsatisfactory performance on a substitute teacher" was used by the Defendant to discriminate against him based on his race. He points to several articles discussing the use of evaluation forms and asserts that experts in the fields of personnel management and organizational psychology agree that an evaluation form should include a minimum of three performance ratings. (Pl.'s Prima Facie Case at 7.) He also refers to a 1990 census report detailing the work profile in Memphis, Tennessee, which Johnson claims establishes that African Americans are disproportionately underrepresented. (Pl.'s Prima Facie Case at 18.) With this information,

Plaintiff may be attempting to state a claim of disparate impact discrimination against the Defendant. However, Plaintiff's statistics do not reflect that SCS employs a disproportionate lesser number of African Americans. Indeed, Johnson's proffered articles and reports do not even speak to the Defendant's employment practices. Therefore, since he has not offered any evidence specific to SCS, the Court concludes that Plaintiff has failed to establish that any employment practice of the Defendant has produced a significant adverse impact against blacks. See Kovacevich, 224 F.3d at 830. To the extent Johnson's complaint could be construed as claiming race discrimination under a disparate impact theory, the Court GRANTS Defendant's motion for summary judgment as to that claim.

*B. Sex Discrimination*

The Plaintiff does not specify whether he is pursuing a disparate treatment or a disparate impact theory of sex discrimination, although he has provided statistical information about men and women in the work force. Based on what he has submitted, the Court will assume that Johnson is presenting both types of claims. However, under either approach, Johnson has failed to establish a prima facie claim. In the disparate treatment context, Johnson is presenting a "reverse discrimination claim" where an employer allegedly discriminates against the majority, that is males. See Ray v. Libbey Glass, Inc., 133 F. Supp. 2d 610, 620 (N.D. Ohio 2001). In order to make out a prima facie case of reverse discrimination, Plaintiff must show that "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority" and that "the employer treated differently employees who were similarly situated but not members of the protected group." See Yeager v. General Motors Corp., 265 F.3d 389, 397 (6th Cir. 2001), cert. denied, 535 U.S. 928, 122 S.Ct. 1299, 152 L.Ed.2d 211 (2002) (citation omitted).

11

In his memorandum, Plaintiff neither argues nor addresses the issue of whether SCS is the type of unusual employer who discriminates against men. See Yeager, 265 F.3d at 397. Moreover, even if Johnson could establish a prima facie claim, SCS has presented nondiscriminatory reasons which he has been unable to refute as pretextual. Therefore, the Court finds Plaintiff has failed to establish a claim of sex discrimination based on disparate treatment.

With respect to his possible disparate impact claim, Johnson submits that "[i]n 1967, nearly 65% of the men surveyed agreed with th[e] principle that the role of married women is best confined to home and family while only about 45% of the women agreed with this position toward a married woman's role in society." (Pl.'s Prima Facie Case at 6.) Plaintiff further provides an unsupported statement that "[i]t is a known fact that women out-number men in elementary schools in Shelby County Tennessee by a ratio of approximately 20 to 1." (Pl.'s Prima Facie Case at 8.) To bolster his position, Johnson attached several articles discussing the roles of women and men in the workplace. (Pl.'s Prima Facie Case, Ex. A, B, C, F, & G.) However, neither these articles nor Plaintiff's conclusory statements refer to SCS or its treatment of male substitute teachers. Conclusory statements devoid of factual bases do not create a genuine issue of material fact. Essence, Inc. v. City of Federal Heights, 285 F.3d 1272, 1289 (10th Cir. 2002), cert. denied, 537 U.S. 947, 123 S.Ct. 411, 154 L.Ed.2d 291 (2002); Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993). Consequently, as Johnson has presented no credible or admissible evidence concerning the Defendant's treatment of male substitute teachers, the Defendant's motion for summary judgment as to Plaintiff's sex discrimination claim under a disparate impact theory is GRANTED.

12

III.  ADEA

Age discrimination actions under the ADEA "are analyzed under the same framework as employment discrimination cases under Title VII." Grosjean v. First Energy Corp., 349 F.3d 332, 335 (6th Cir. 2003) (citations omitted).  Therefore, to make out a prima facie case of age discrimination under the ADEA based on a disparate treatment theory, the "plaintiff must establish that: (1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (4) after he was rejected, a substantially younger applicant was selected." Burzynski v. Cohen, 264 F.3d 611, 622 (6th Cir. 2001) (citations omitted).  Once the plaintiff establishes a prima facie case for discrimination, the burden-shifting process, as in Title VII cases, occurs. Id.  "Age must be a 'determining factor' in an employment decision in order to impose liability upon the employer." Blackwell v. Sun Elec. Corp., 696 F.2d 1176, 1181 (6th Cir. 1983).  The ADEA "was not intended as a vehicle for judicial review of business decisions." Ackerman v. Diamond Shamrock Corp., 670 F.2d 66, 70 (6th Cir. 1982) (citations and internal quotations omitted).  Moreover, the "ADEA was not intended to protect older workers from the harsh realities of common business decisions and hardships associated with corporate reorganization, downsizing, plant closings and relocations." Allen v. Diebold, Inc., 33 F.3d 674, 677 (6th Cir. 1994).

In support of his claim based on disparate treatment, Johnson, who is over forty, submits that he was subjected to age discrimination when he was taken off the list of eligible substitutes for Shelby County Schools.  However, Johnson has not presented any evidence showing that substantially younger substitute teachers were selected in his place. See Burzynski, 264 F.3d at 622. Thus, he has not established a prima facie case of age discrimination.  As well, the Defendant has

13

offered nondiscriminatory reasons for Johnson's discharge which he has not rebutted as pretextual. Finally, Plaintiff has presented no facts which would overcome the same-actor inference. <u>See</u> <u>Wexler.</u>, 317 F.3d at 590.

As with his other claims, Plaintiff points to articles, one of which is entitled "The Graying Professoriate: Faculty Attitudes and Characteristics; Results of a 1998-99 Survey" which notes that "the majority of the workforce is located between the age brackets of 40-54" while the number of employed persons over 60 years old is much less. (Pl.'s Prima Facie Case at 13-14.) Relying on a 1990 census report for Memphis, Tennessee, Plaintiff concludes that, because only 8.4% of the total work force was between 55 and 64 years old, "not many seniors over 65 years old in Memphis are employable." (Pl.'s Prima Facie Case at 18.) Likewise, as with his previous submissions, none of the statistics or information on which the Plaintiff relies establishes that SCS discriminated against him or anybody else. The fact that "not many seniors" are working in the City of Memphis proves nothing about whether the Defendant may have discriminated against people over the age of forty. Plaintiff's statistics are irrelevant and therefore inadmissible. <u>See</u> <u>McMillan v. Mass. Soc'y for the</u> <u>Prevention of Cruelty to Animals</u>, 140 F.3d 288, 303 (1st Cir. 1998) (stating that in a disparate impact case statistics that are "so incomplete" are inadmissible as irrelevant) (quoting <u>Bazemore v.</u> <u>Friday</u>, 478 U.S. 385, 400 n.10, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986)). Thus, the Court GRANTS Defendant's motion for summary judgment on Plaintiff's age discrimination claim.

CONCLUSION

For the reasons articulated herein, the Defendant's motion for summary judgment is GRANTED. Accordingly, this matter is DISMISSED, Plaintiff's motion to continue the trial date is DENIED as moot, and the Clerk of Court is directed to enter judgment in favor of the Defendant.

14

**IT IS SO ORDERED** this 26th day of April, 2005.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 32 in case 2:03-CV-02911 was distributed by fax, mail, or direct printing on April 29, 2005 to the parties listed.

---

Steven W. Dills
JACKSON SHIELDS YEISER HOLT SPEAKMAN & LUCAS
262 German Oak Dr.
Memphis, TN 38018

Johnny Johnson
773 Margie Dr.
Memphis, TN 38127

Stephen L. Shields
JACKSON SHIELDS YEISER HOLT SPEAKMAN & LUCAS
262 German Oak Dr.
Memphis, TN 38018

Honorable J. Breen
US DISTRICT COURT